ADY ET AL., APPELLEES, *v.*
WEST AMERICAN INSURANCE COMPANY, APPELLANT.

[Cite as Ady v. West American Ins. Co. (1982),
69 Ohio St. 2d 593.]

(No. 80-1670—Decided February 26, 1982.)

594

*Robert J. DiCello Co., L.P.A.,* and *Mr. Robert J. DiCello,* for appellees.

*Messrs. Greene, Tulley & Jurjans* and *Mr. Joseph O. Tulley,* for appellant.

CELEBREZZE, C. J.

The issue presented for our determination is whether the exclusion contained in the uninsured motorist coverage of this insurance policy is valid. To be valid, the exclusion must not be contrary to the public policy reflected in R. C. 3937.18. The statute states in relevant part:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this

state with respect to any motor vehicle registered or principally garaged in this state unless an equivalent amount of coverage for bodily injury or death is provided therein or supplemental thereto under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. The named insured shall have the right to reject such coverage, or may require the issuance of coverage for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent, that shall be no less than the limits set forth in section 4509.20 of the Revised Code for bodily injury or death * * * .''

We must consider this exclusion in light of the purpose of the statute and the coverage mandated. Because we have had several opportunities previously to consider the statute, only a brief review is necessary at this time.

In *Abate* v. *Pioneer Mutl. Cas. Co.* (1970), 22 Ohio St. 2d 161, 165, we stated that uninsured motorist coverage "is designed to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated." The same conclusion, and indeed the same language, was repeated in *Curran* v. *State Automobile Mutl. Ins. Co.* (1971), 25 Ohio St. 2d 33, 38, and subsequently, in *Bartlett* v. *Nationwide Mutl. Ins. Co.* (1973), 33 Ohio St. 2d 50, 52. We also concluded in *Bartlett, supra,* that " * * * the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tort-feasor had possessed liability insurance." This statement of the legislative purpose was repeated in *Shearer* v. *Motorists Mutl. Ins. Co.* (1978), 53 Ohio St. 2d 1, 7.

Thus, we have consistently determined that the public policy of the uninsured motorist statute is to protect persons injured in motor vehicle accidents from losses because of the tort-feasor's lack of liability insurance coverage. Applied to these facts, Terry Ady was insured, physically injured and sustained financial loss as the result of the tort-feasor's lack of

liability insurance coverage. Thus, his financial loss should be covered to effectuate the purpose of the statute.

Similarily, on several previous occasions we have specifically stated that the statute is designed to protect persons, not vehicles. One of the first cases based on this statute was *Motorists Mutl. Ins. Co.* v. *Tomanski* (1971), 27 Ohio St. 2d 222, 224, in which we quoted *Horne* v. *Superior Life Ins. Co.* (1962), 203 Va. 292, 123 S.E. 2d 401, 404: " '[i]t is not the purpose of the uninsured motorist law to provide coverage for the uninsured vehicle, but its object is to afford the insured additional protection in the event of an accident.' " In *Curran, supra,* at page 38, a unanimous court stated that the legislative purpose is that "coverage be provided to persons injured through the acts of uninsured motorists." More recently, in *Orris* v. *Claudio* (1980), 63 Ohio St. 2d 140, the majority recognized the merit of the view that the coverage is personal in nature. This interpretation of the statute was clearly enunciated in the dissent (Celebrezze, C. J.):

"The risk protected against by uninsured motorist coverage is not based on the vehicle driven or the negligence of the insured. The coverage protects against loss due to bodily injuries or death caused by another who is at fault. It should ordinarily attach to an insured, not to a vehicle." *Id.,* at page 145. The rationale of these cases indicates that the focus of the statute is the protection of personal losses, such as Terry Ady's.

Furthermore, we have previously concluded that the statute requires mandatory offering of uninsured motorist coverage. In *Abate, supra,* at page 165, we stated that "R. C. 3937.18 makes mandatory offering of uninsured motorist coverage * * * ." Just last term we reiterated this in *Kish* v. *Central Nat. Ins. Group* (1981), 67 Ohio St. 2d 41, 44, citing *Tomanski, supra.* Moreover, this statutorily mandated coverage can not be whittled away by private parties. In *Bartlett, supra,* at page 53, we stated that "[p]rivate parties are without power to insert enforceable provisions in their contracts of insurance which would restrict coverage in a manner contrary to the intent of the statute." Therefore, any restriction on full coverage should emanate from the General

Assembly[1]; otherwise a contractual limitation in the insurance policy should comply with the statutory purpose.

In evaluating the validity of a contractual limitation, it is important to consider the nature of the parties involved. The General Assembly, realizing that insurance companies are in a much stronger bargaining position *vis a vis* their customers when insurance is sold, decided that uninsured motorist coverage is desirable and mandated that it be offered. *Orris, supra,* at 146. (Celebrezze, C. J., dissenting). Thus, the stronger position of an insurance company must be remembered when assessing the validity of an exclusion which reduces the mandated coverage.

Insurance companies write the policies and present the pre-printed forms to customers, most of whom are unfamiliar with terminology found in the multi-page policies. Most customers accept the policies *in toto* and do not question, let alone actively negotiate to change or omit, any of the provisions in the pre-printed forms. Therefore, an insurance company has the burden of showing that any rejection was knowingly made by the customer. A customer has the option of rejecting coverage. However, to make a rational decision to reject coverage, a customer has to be aware of a contractual provision, understand its terms and agree to it. Thus, any rejection or exclusion should be conspicuous so that a customer is aware of its existence.[2] Furthermore, the language should be clear and easily understood by a lay person. Also there should be evidence that the customer agreed to the restriction on coverage.

Applying these principles to the facts in this case, the exclusion in this pre-printed insurance policy was in small print and complex terminology. The relevant definition interpreting the exclusion is on the reverse side of the page on which the exclusion is printed. To be covered, a vehicle must be described

[1] Effective June 25, 1980, R. C. 3937.18 was amended to provide that:

"(E) Any automobile liability or motor vehicle liability policy of insurance that includes uninsured motorist coverage may include terms and conditions that preclude stacking of uninsured motor vehicle coverages."

[2] A provision which reduces coverage should be conspicuous and clear as required by the Federal Trade Commission and the U. C. C. for warranty disclaimers, which also decrease consumer rights. 16 C.F.R. 701.3 (1978); Sections 2301-2312, Title 15, U. S. Code; and U.C.C. 2-316(2).

in a schedule which is also in yet another location in the policy. There is no cross reference to help a customer tie together these three items so that one might understand what is covered and what is being rejected by merely accepting the pre-printed form. This exclusion is not conspicuous and the terms and implications are not clear. Thus, it has not been shown that the customer was aware of, understood, or knowingly accepted this exclusion.

This conclusion is supported by our previous rule that language in an insurance policy is to be construed strictly against the drafter, the insurance company, and liberally in favor of the insured. *Ohio Farmers Ins. Co.* v. *Wright* (1969), 17 Ohio St. 2d 73, 78. A decade ago this court stated in *Curran, supra,* at page 38, that the "uninsured motorist statute should be construed liberally in order to effectuate the legislative purpose that coverage be provided to persons injured through the acts of uninsured motorists." Thus, if the insurance company intended such an exclusion, it should have the burden of using straightforward, simple language and showing that the exclusion was understood by the customer. Because this exclusion was not conspicuous and not clearly drafted for the lay person, it should be strictly construed against the insurance company and not permitted to limit the statutorily mandated coverage.

Appellant argues that invalidating the exclusion would result in a "free ride" for Terry Ady. That is, he could obtain uninsured motorist coverage, at no additional cost, under his father's policy. Initially, it is important to note that Terry Ady paid premiums for uninsured motorist coverage under his own policy. Here, he was asking for coverage under his father's policy only for expenses above those covered by his own policy. But for the exclusion, he would qualify for coverage under his father's policy.

More importantly, the purpose of the statute is to protect persons injured by uninsured motorists, it does not limit coverage to a few situations. For example, Terry Ady would have been protected under his father's policy if he had been a guest passenger or if he was a pedestrian and injured by an uninsured motorist. The statute mandates broad coverage to an insured and does not limit it merely to those who have pur-

chased separate insurance on all vehicles. The cost of this broad coverage is passed on to all insured drivers as a necessary means of achieving the public policy of protecting persons from losses due to uninsured motorists. Insurance companies are not disadvantaged because the cost of claims is passed on to customers. Although invalidating this exclusion may decrease the incentive for sales of separate insurance coverage on all vehicles, it is imperative to remember that the purpose of the statute is to protect injured persons and not to promote insurance sales. Thus, appellant's "free ride" argument is not persuasive in light of the risk distribution and, more importantly, the public policy served.

Therefore, we conclude that because the statute mandates that full coverage be offered, any restriction must be closely scrutinized to be sure that it complies with the statutory purpose. Furthermore, an exclusion must be conspicuous and in terminology easily understood by a customer. A customer must be aware of the provision, understand the meaning and voluntarily agree to any restrictions on the full coverage statutorily mandated. In this case, a pre-printed form was used and it has not been shown that the customer was aware of the exclusion, let alone understood the meaning and then knowingly agreed to reject this portion of the coverage. Thus, the exclusion is invalid because it does not comply with the statutory purpose and, furthermore, is not clear and conspicuous.

In *Orris, supra,* a majority of the court upheld a similar exclusion based on the premise that the contractual provision was contemplated by the parties.[3] To be consistent with our previous decisions[4] and the case at bar, we conclude that the exclusion in *Orris* is contrary to the purpose of the statute. Furthermore, it is not clear that the exclusion meets the standards set forth above to ensure that the customer was aware of it, understood the implications and actually agreed to the restriction. Therefore, the exclusion is invalid and we overrule *Orris* to that extent.

Accordingly, the judgment of the Court of Appeals is affirmed.

[3] This rationale was criticized for ignoring the policy of the statute. 10 Capital University L. Rev. 415, 55 Law and Fact 8.

[4] *Abate, Curran, Bartlett, Shearer, Tomanski, supra.*

*Judgment affirmed.*

W. BROWN, SWEENEY and C. BROWN, JJ., concur in the syllabus and judgment.

LOCHER, HOLMES and KRUPANSKY, JJ., dissent.

CLIFFORD F. BROWN, J., concurring. I concur in the judgment, and the excellent analysis made of our recent cases in support thereof, namely, *Abate, Curran, Bartlett, Shearer* and *Tomanski,* and the dissent in *Orris.* While, I concur in the syllabus, I believe that to be consistent with this court's cases as cited *infra,* the syllabus should read as follows:

"Any contractual restriction or exclusionary clause on the uninsured motorist coverage mandated by R. C. 3937.18, except as authorized in division (E), is contrary to the legislative purpose of the statute to require mandatory offering of such coverage, and therefore is invalid. (*Orris* v. *Claudio,* 63 Ohio St. 2d 140, overruled.)"

The protection required by R. C. 3937.18 is personal in nature, applying to "persons injured" who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, and cannot be diluted or diminished by limitation and exclusionary clauses, no matter how conspicuous or what negotiations occur between the insurer and insured when the coverage is purchased.[5]

In *Abate* v. *Pioneer Mutl. Cas. Co.* (1970), 22 Ohio St. 2d 161, at page 165, as excerpted in the majority opinion, this court held that uninsured motorist coverage "is designed to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated. R. C. 3937.18 makes mandatory the offering of uninsured motorist coverage by insurance companies licensed in the state of Ohio."

In *Curran* v. *State Automobile Mutl. Ins. Co.* (1971), 25

---

[5] By the same token since the exclusionary clauses for uninsured motorist coverage are invalid *per se* it is irrelevant whether a customer is aware of a contractual limitation or exclusionary clause, and whether he understands the insurance policy terms and agrees to them. For the same reason it is irrelevant whether the exclusionary or limitation language is clear or whether the language is easily understood by a lay person. The exclusionary clause is invalid even where the customer is aware of, understands, and knowingly accepts the exclusion.

Ohio St. 2d 33, we held invalid as repugnant to R. C. 3937.18 (A) an "other insurance" clause which, if applied, would relieve the insurer from liability where the insured had other similar insurance available. In *Curran,* Justice J.J.P. Corrigan, writing for a unanimous court, articulately explained the purpose of R. C. 3937.18, at page 38, as follows:

"R. C. 3937.18 itself indicates that uninsured motorists coverage is 'for the protection of *persons insured* thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * * .' (Emphasis added.)

"Given this express statutory purpose, we are of the opinion that the uninsured motorist statute should be construed liberally in order to effectuate the legislative purpose that coverage be provided to persons injured through the acts of uninsured motorists. To permit an insurer, who provides uninsured motorists coverage, to avoid liability by an 'other insurance' clause in cases where other insurance is available to his insured would thwart that legislative intent. We therefore join those jurisdictions which have declined to give effect to 'other insurance' clauses in such cases."

In *Bartlett* v. *Nationwide Mutl. Ins. Co.* (1973), 33 Ohio St. 2d 50, we held an exclusionary clause invalid which would have reduced the amount payable to an insured to the extent of any sum received through workers' compensation benefits paid to the insured. The reason for the invalidity of exclusionary clauses generally, not just the exclusionary clause in controversy in this case, was perspicaciously asserted by Justice Thomas Herbert in *Bartlett, supra,* at pages 52-53, as follows:

"The basic purpose of R. C. 3937.18 is clear. It 'is designed to protect persons injured in automobile accidents from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated.' *Abate* v. *Pioneer Mutl. Cas. Co.* (1970), 22 Ohio St. 2d 161, 165, 258 N.E. 2d 429; *Curran* v. *State Automobile Mutl. Ins. Co.* (1971), 25 Ohio St. 2d 33, 266 N.E. 2d 566; see, also, Note 1, 20 Cleve. L. Rev. 10 (1971). In other words, the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery

of damages, that he would have been in if the tortfeasor had possessed liability insurance.

"* * *

"As suggested by *Abate* and *Curran, supra,* R. C. 3937.18, *ab initio,* enunciated a public policy in this state. Private parties are without power to insert enforceable provisions in their contracts of insurance which would restrict coverage in a manner contrary to the intent of the statute."[6]

In *Grange Mutl. Cas. Co.* v. *Volkmann* (1978), 54 Ohio St. 2d 58, in an opinion by Justice Celebrezze on behalf of a unanimous court, we held it impermissible for an insurer, which is providing uninsured motorists coverage to its insured's three vehicles under individual policies of insurance, to avoid liability under all but one of those coverages by inserting in each contract the "other owned vehicle" exclusion. We further held that "[u]nder the foregoing circumstances such an exclusion is repugnant to the public policy expressed in R. C. 3937.18." *Volkmann,* paragraph two of the syllabus.

Further support and rationale for the holding in *Volkmann, supra,* is contained in footnote three of the opinion at pages 60-61, which is clarified by the dissent of Chief Justice Celebrezze in *Orris* v. *Claudio, supra,* at page 145:

"In addition, in fn. 3, at pages 60-61, we stated:

" 'In view of the specific fact situation presented in the cause at bar we need not at this time enter the ongoing controversy over the "free ride" effect. The weight of authority in this country holds that where a person is operating a motor vehicle which does *not* have uninsured motorist coverage, and sustains bodily injury as the result of the negligent operation of another uninsured vehicle, the insured person may recover under the uninsured motorists coverage(s) of another vehicle (or vehicles) owned by a member (or members) of that person's household, even in the face of an exclusion purporting to deny coverage in such a circumstance.'

"The risk protected against by uninsured motorists coverage is not based on the vehicle driven or the negligence of the insured. The coverage protects against the loss due to bodily

---

[6] This holding was discussed and approved by this court as recently as 1980, as was *Curran, supra,* in *Orris, supra,* at page 141. The foregoing excerpt was also approved in *Shearer* v. *Motorists Mutl. Ins. Co.* (1978), 53 Ohio St. 2d 1, at pages 6-7.

injuries or death caused by another who is at fault. It should ordinarily attach to an insured, not to a vehicle. We implicitly recognized this in *Volkmann, supra,* when we held that R. C. 3937.18 prevented clauses which did not allow an individual to stack policy limits on uninsured motorists coverage even though the policies insured different vehicles."

To be consistent with our holdings and rationale in *Abate, Curran, Bartlett, Shearer* and *Volkmann,* we must hold that the exclusionary clause in the present case as applied to plaintiff is against public policy and invalid by reason of its repugnancy to R. C. 3937.18. It is invalid *per se,* no matter how conspicuously it is worded, no matter how well it is understood and no matter what negotiations precede its insertion into the insurance contract.

I concur in the judgment overruling *Orris.* It is bad law and never should have existed. It is contrary either to the holdings or the reasoning of *Abate, Curran, Bartlett, Shearer* and *Volkmann. Stare decisis* is a standard flexible enough to eliminate a bad judicial precedent at any time in order to attain justice. See my concurring opinion, in *Shroades* v. *Rental Homes* (1981), 68 Ohio St. 2d 20, 27.

Consistency with the foregoing quintet of recent cases— and for the same reason we overrule *Orris, supra*—requires the overruling at the earliest possible date of our recent holding in *Colvin* v. *Globe American Cas. Co.* (1982), 69 Ohio St. 2d 293, where in a split decision this court validated a contractual 12-month time limitation period for commencing an action to recover uninsured motorists benefits.

W. Brown and Sweeney, JJ., concur in the foregoing concurring opinion.

Holmes, J., dissenting. The syllabus of the majority opinion here should be:

"Where a policy of insurance contains reasonably specific language excluding other motor vehicles owned by an insured from the uninsured motorist provision of the policy, such exclusion is valid, and not contrary to the public policy contained in R. C. 3937.18. (*Orris* v. *Claudio,* 63 Ohio St. 2d 140, approved and followed.)"

Due to the revolving door syndrome here evidenced by this

court, we again renounce the doctrine of *stare decisis,* retrace our steps and pronounce law contrary to that which this court has most recently established.

The observations expressed by this court in *Orris,* regarding the right to reasonably contract as to the extent of the coverage of the uninsured motorist provision of an automobile insurance policy, are equally applicable here. More precisely, in the contractual sense, the exclusionary provisions of the policy may be applied here with even more firm basis than in *Orris.* In *Orris,* the insured was the contracting party who had paid the premiums on the covered automobile. Here, the son, Terry Ady, is not the contracting party, but simply an "insured" by reason of the extended coverage. Is it reasonable to conclude that the one who purchases the policy does so with the intent that he is purchasing less coverage for himself than for the other insureds within the policy? I think not.

Further, the father's contract of insurance in this case covered a Ford pickup truck, not a motorcycle owned by his son. Can it reasonably be assumed that the insurer and its policyholder, based upon the premium paid, had intended that the insurance contract was to cover a motorcycle which would require double the amount of the premiums for the covered vehicle? Again, my answer must be in the negative.

Additionally, it should be noted that if the policyholder had wished to cover his son, or others, who were driving their own motor vehicles, he could have done so by specifying his son, or others, as "designated insureds" within the body of the insurance policy. With such a designation, pursuant to section I, paragraph (b) of the policy, the named insured, or any relative living in the same household, would specifically not be excluded from coverage where injuries were occasioned while occupying or if struck by a highway vehicle owned by a designated insured or his relatives.

In construing the mandates of the General Assembly insofar as the offering of uninsured motorist coverage in Ohio is concerned, we must not unduly restrict the free right of contract, and must allow for a certain amount of latitude for the exercise of discretion on the part of the policyholder as to the desirable extent or breadth of coverage for which he is willing, or able, to pay the premiums.

It is my view that neither the holding in *Orris,* nor my position here, does violence to the prior pronouncements of this court in this general area of uninsured motorist coverage. The principal argument of the appellees herein is that the prior law, as established by this court in *Curran* v. *State Automobile Mutl. Ins. Co.* (1971), 25 Ohio St. 2d 33, and *Grange Mut. Cas. Co.* v. *Volkmann* (1978), 54 Ohio St. 2d 58, dictates that we find uninsured motorist coverage for Terry Ady in his father's insurance policy. I cannot agree with this argument in that it is my view that the holdings in those cases may be reasonably distinguished from the facts and my position in the instant case.

In *Curran,* the injured claimant, Mary D. Curran, was involved in an accident while riding as a passenger in a friend's automobile which had uninsured motorist coverage, including coverage of passengers. Curran had obtained uninsured motorist coverage under her own automobile policy from which she sought recovery for injuries suffered in the accident. Her insurer denied coverage because her policy contained a provision excluding coverage when "other insurance" was available for indemnification of the insured. This court held that such "other insurance" clause in an uninsured motorist coverage was repugnant to R. C. 3937.18. The court further held that where the insured had collected her pro-rata share of the primary coverage for the indemnification of her injuries, she was entitled to collect for the balance of her injuries to the extent of the policy limits on her own insurance policy as the secondary coverage for the uninsured motorist damage.

In *Curran,* unlike the present case, Curran was an insured passenger in the insured automobile owned by the named insured. Coverage was provided by virtue of the specific terms in the policy, as it would have been under the policy in this case. Further, since *Curran* paid a premium for her own uninsured motorist coverage, this court logically held that as secondary coverage her insurance carrier could not deny indemnification for the balance of Mary Curran's injuries. Here, if the son had been a passenger in his father's automobile and sustained injuries, there is no question that, according to *Curran,* he could have recovered the amount of his injuries to the limits of his father's policy and his own policy. Here,

however, because of the exclusionary clause of his father's policy, the appellee was not riding in an "insured vehicle" under such policy at the time of the accident. He was, however, at the time riding in an insured vehicle under his own policy of insurance, and he in fact had recovered indemnification under such policy.

In *Volkmann, supra,* this court held that an insured who owns more than one motor vehicle, and purchases separate policies of insurance on each from the same insurer, may "stack" all the uninsured motorist coverages for which a separate premium had been paid, provided that the recovery is limited to the actual losses of the insureds, but that no pyramiding of policy limits would be countenanced. This court held that in such a situation the insurer may not avoid full indemnification of its insured for losses sustained by including in each insurance contract an "other owned vehicle" exclusion, as such would be repugnant to public policy as expressed in R. C. 3937.18.

Here, unlike the facts in *Volkmann,* we are not dealing with an "other owned vehicle" of the named insured, or of the other insureds, upon which uninsured motorist coverage had been contracted for with the insurer. Instead, we are confronted with the facts that the other owned vehicle was one owned by an insured, a relative living in the same household, upon which other owned vehicle, a motorcycle, Terry Ady had obtained a policy of insurance with another insurance carrier. The insurer of such motorcycle did in fact meet its responsibilities under the provisions of such contract.

The court's basic justification in *Volkmann* for this "stacking" of the coverage of the separate policies was that the insured had paid three separate premiums for each of his three automobiles, and therefore those who were insured under such policies should not be denied the coverage under all such policies with the insurance carrier to the extent of damages sustained.

My determination here does nothing to abrogate the holding in *Volkmann,* but it is important to note that because of an amendment to R. C. 3937.18, effective June 25, 1980, that holding would no longer be viable or have force and effect

in Ohio. This amendment added subsection (E) to R. C. 3937.18, which reads:

"Any automobile liability or motor vehicle liability policy of insurance that includes uninsured motorist coverage may include terms and conditions that preclude stacking of uninsured motor vehicle coverages."

Although this amendment to R. C. 3937.18 would not influence my decision in this matter, it does indeed evidence a legislative pronouncement of public policy regarding the validity of the principle of reasonable contractual allowance between the insurer and the insured in the provision of uninsured motorist coverage.

Based on the foregoing, I would hold that the uninsured, motorist provision of this policy as contracted for by the parties is a reasonably valid one under the law. An exclusion of an owned automobile of this insured, who is living in the same household as the named insured and which automobile is not insured under the policy of the named insured, was a subject of negotiation and contract by the parties and is not contrary or repugnant to R. C. 3937.18.

Accordingly, I would reverse the judgment of the Court of Appeals.

LOCHER and KRUPANSKY, JJ., concur in the foregoing dissenting opinion.