ROY, APPELLEE, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., APPELLEE; PROGRESSIVE INSURANCE CO., APPELLANT.

(No. 44511—Decided December 30, 1982.)

*Mr. Thomas H. DeChant,* for appellee Roy.

*Mr. Henry A. Hentemann,* for appellee State Farm Mut. Auto. Ins. Co.

*Mr. John A. Neville,* for appellant Progressive Ins. Co.

PATTON, J. Defendant-appellant, Progressive Mutual Insurance Company, appeals from an adverse finding by the court of common pleas in a declaratory judgment action.

The cause of action litigated below arose out of an accident occurring on August 10, 1979, in Cleveland, Ohio. Plaintiff-appellee, Susan Roy, was a passenger on a motorcycle owned by Richard Shipp and being operated by Douglas Palmer, with Shipp's consent. The motorcycle collided with an automobile being driven by Ronald Small, and as a result, appellee sustained personal injuries. Neither the automobile nor the motorcycle was covered by any policy of insurance. Douglas Palmer, however, was insured by appellant under a policy covering an automobile owned by him. State Farm Mutual Automobile Insurance Company had issued two policies of insurance to appellee's father, Stanley Roy.

Appellee made an uninsured motorist claim against both State Farm and appellant, whose policies provided for uninsured motorist protection. These claims were denied. Appellee thereafter instituted a declaratory judgment action against State Farm and appellant to determine the issue of coverage under each policy of insurance.

A trial was had before the court, after which it was determined that appellee was covered under both policies.[1]

Appellant, Progressive Mutual Insurance Company, appeals and presents six assignments of error for this court's review.[2]

Appellant's first five assignments of error are interrelated and shall therefore be treated together:

"I. The court erred in finding that the motorcycle being operated by Douglas Palmer and on which Susan Roy was a passenger was an 'insured automobile' within the meaning of the policy issued by the defendant-appellant, Progressive Mutual Insurance Company, hereinafter known as Progressive.

"II. The court erred in finding that the plaintiff-appellee, Susan Roy, was entitled to coverage under the uninsured motorist and medical payments provisions of the Progressive policy while a passenger on the motorcycle being operated by Progressive's insured, Douglas Palmer.

"III. The court erred in finding Douglas Palmer was insured under a liability insurance policy as opposed to an automobile liability insurance policy.

"IV. The court erred in finding that the term 'automobile' was essentially synonomous [sic] with the term 'motor vehicle' within the meaning of the Progressive policy.

"V. The court erred in finding ambiguity in the Progressive policy."

The issue to be determined is whether appellee is entitled to uninsured motorist protection under appellant's policy as a result of her being a passenger on a motorcycle operated by appellant's insured. We find that appellee is entitled to coverage for the reasons set forth below.

The trial court determined that appellant's policy of insurance was ambiguous and found further:

"That the motor vehicle-motorcycle upon which Susan Roy was a passenger is an 'insured automobile' under the terms of the Progressive policy.

"That the Progressive policy is primary and the State Farm policy is secondary under the facts of this case."

It is appellant's argument that the language of its policy is not ambiguous, because the words used therein have a plain and ordinary meaning, and they reasonably exclude coverage for the motorcycle upon which appellee was riding.

The relevant provisions of the policy provide in part as follows:

---

[1] Appellee's counsel stipulated that there was no medical payments coverage under the State Farm policy applicable to the motorcycle accident.

[2] State Farm voluntarily dismissed its appeal.

"Part IV - Protection Against Uninsured Motorists

"Coverage 1 - Uninsured Motorists (Damages for Bodily Injury)

"To pay all sums which the insured or his legal representative shall be entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance, or use of such uninsured automobile; * * *.

"* * *

"Definitions. The definitions under Part 1, except the definition of 'insured,' apply to Coverage 1, and under Coverage 1:

" 'insured' means:

"(a) the named insured as stated in the policy and, * * *

"(b) *any other person while occupying an insured automobile;* * * *

" *'insured automobile' means:* * * *

"* * *

"(d) *a non-owned automobile while being operated by the named insured;* * * *" (Emphasis added.)

The applicable definitions provide in part:

" '[O]wned automobile' means (a) a private passenger, farm or utility automobile described in this policy * * *.

" '[T]emporary substitute automobile' means any automobile or trailer, not owned by the named insured * * *.

" '[N]*on-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative* * * *.

" '[P]*rivate passenger automobile' means a four wheel private passenger, station wagon or jeep type automobile.*

" '[F]arm automobile' means an automobile of the truck type with a load capacity * * *.

" '[U]tility automobile' means an automobile, other than a farm automobile * * *.

" '[T]railer' means a trailer designed for use with a private passenger automobile." (Emphasis added.)

We are well-aware of the established rule that words in an insurance contract are to be given their natural and commonly accepted meaning. *Gomolka* v. *State Auto Mut. Ins. Co.* (1982), 70 Ohio St. 2d 166, 167-168 [24 O.O.3d 274]. However, where language in a contract of insurance is reasonably susceptible of more than one meaning, such language will be construed liberally in favor of the insured and strictly against the insurer. *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95 [68 O.O.2d 56].

We observe that a motorcycle is not an uncommon mode of transportation. Appellant had both the capacity and the opportunity to exclude from coverage liability incurred as the result of its named insured's operation of a motorcycle. This could have been accomplished either explicitly, by using the term "motorcycle" in the policy in language indicating exclusion, or implicitly, by defining "non-owned automobile" in the manner appellant chose to define a "private passenger automobile," viz., a "four wheel" automobile. Instead, appellant chose to define "non-owned automobile" in a manner in which it is not clear that a motorcycle was intended to be excluded from the meaning of its policy. Indeed, as the court below found, the important term, "automobile," was left undefined in appellant's policy.

Because the operative policy language contained in appellant's uninsured motorist provision defining "non-owned automobile" does not unambiguously exclude a motorcycle from coverage, we cannot say that the trial court erred in finding the policy ambiguous on this issue. "[P]olicies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most

favorably for the insured." *Butche* v. *Ohio Cas. Ins. Co.* (1962), 174 Ohio St. 144, 146 [19 O.O.2d 118]. Accordingly, we find that the motorcycle operated by appellant's insured is a "non-owned automobile," and thus an "insured automobile" within the meaning of appellant's policy.[3]

The case relied upon by appellant, *Jirousek* v. *Prudential Ins. Co.* (1971), 27 Ohio St. 2d 62 [56 O.O.2d 34], in which the court found that the words "automobile" and "motorcycle" were not synonymous, and determined that a beneficiary was therefore not entitled to benefits from a life insurance policy as a result of the deceased's death in a motorcycle accident, is inapposite to the facts in the case at bar for the reason that there the term "automobile" was unambiguously defined as a "private automobile of pleasure car design." Further, our finding does not imply that these two terms are synonymous. We hold only that the language contained in appellant's policy does not operate to exclude a motorcycle from coverage.

Uninsured motorist coverage "is designed to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go un-

compensated." *Abate* v. *Pioneer Mut. Cas. Co.* (1970), 22 Ohio St. 2d 161, 165 [51 O.O.2d 229]. Uninsured motorist coverage serves an important public policy interest, and thus its offering is made mandatory by R.C. 3937.18.[4] *Kish* v. *Central Nat. Ins. Group* (1981), 67 Ohio St. 2d 41, 44 [21 O.O.3d 26]; *Abate, supra,* at 163. Because the statute mandates that full coverage be offered, "any restriction [in an insurance policy] must be closely scrutinized to be sure that it complies with the statutory purpose." *Ady* v. *West American Ins. Co.* (1981), 69 Ohio St. 2d 593, 599 [23 O.O.3d 495].

In *Ady,* a recent case decided by the Ohio Supreme Court involving the validity of an exclusion contained in an uninsured motorist provision of an insurance contract, the court stated:

"* * * Therefore, an insurance company has the burden of showing that any rejection was knowingly made by the customer. A customer has the option of rejecting coverage. However, to make a rational decision to reject coverage, a customer has to be aware of a contractual provision, understand its terms and agree to it. * * *" *Id.* at 597.

"* * * Thus, if the insurance company

---

[3] This finding makes it unnecessary for us to address the issue of whether "automobile" is synonymous with "motor vehicle" under appellant's policy.

[4] R.C. 3937.18(A), at the time relevant herein, provided:

"No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle *shall be delivered or issued* for delivery *in this state* with respect to any motor vehicle registered or principally garaged in this state *unless an equivalent amount of coverage for bodily injury or death is provided therein or supplemental thereto* under provisions approved by the superintendent of insurance, *for the protection of persons*

*insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* because of bodily injury, sickness, or disease, including death, resulting therefrom. *The named insured shall have the right to reject such uninsured motorist coverage,* or may require the issuance of coverage for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent, that shall be no less than the limits set forth in section 4509.20 of the Revised Code for bodily injury or death. Unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer." (Emphasis added.)

intended such an exclusion, it should have the burden of using straightforward, simple language and showing that the exclusion was understood by the customer. Because this exclusion was not conspicuous and not clearly drafted for the lay person, it should be strictly construed against the insurance company and not permitted to limit the statutorily mandated coverage." *Id.* at 598.

"* * * A customer must be aware of the provision, understand the meaning and voluntarily agree to any restrictions on the full coverage statutorily mandated. In this case, a pre-printed form was used and it has not been shown that the customer was aware of the exclusion, let alone understood the meaning and then knowingly agreed to reject this portion of the coverage. * * *" *Id.* at 599.

There is no evidence in the record to suggest that appellant's named insured voluntarily agreed to accept a motorcycle restriction on his uninsured motorist coverage.

R.C. 3937.18 is broad enough in its coverage to include motorcycles. In *Langston* v. *Progressive Cas. Ins. Co.* (1977), 56 Ohio App. 2d 17 [10 O.O.3d 24], the court found that "[t]he provisions of R.C. Chapter 3937 covering motor vehicle insurance are fully applicable to motorcycles." *Id.* at paragraph one of the syllabus. Appellant agrees that a motorcycle is a "motor vehicle," but argues that a motorcycle is not an "automobile," and therefore is not covered under its policy, which is an automobile liability policy of insurance. This distinction is largely irrelevant for our purposes in light of those holdings which provide that the uninsured motorist statute "is designed to protect persons, not vehicles." *Ady* at 596; see, also, *Motorists Mut. Ins. Co.* v. *Tomanski* (1971), 27 Ohio St. 2d 222, 224 [56 O.O.2d 133].

Appellant's first five assignments of error are therefore without merit.

The sixth assignment of error is as follows:

"The court erred in finding the Progressive policy to be primary."

Appellant argues that its coverage should be prorated equally with the coverage afforded appellee under State Farm's policy. We disagree.

The motorcycle operated by appellant's insured is an "insured automobile" within the meaning of appellant's policy. It is well-established in Ohio that insurance follows the vehicle. Thus, appellant's policy is primary. See *Curran* v. *State Automobile Mut. Ins. Co.* (1971), 25 Ohio St. 2d 33, 38-39 [54 O.O.2d 166].

This assignment of error is without merit.

Judgment affirmed.

*Judgment affirmed.*

PRYATEL, C.J., and MARKUS, J., concur.