RAGLAND ET AL. *v.* NATIONWIDE MUTUAL INSURANCE COMPANY.

(No. 85-CV-0939 —
Decided December 31, 1986.)

Court of Common Pleas
of Clermont County.

*Donald W. White,* for plaintiffs.
*Gary D. Ostendarp,* for defendant.

RINGLAND, J. This matter came before the court on October 27, 1986 on plaintiffs' complaint for a declaratory judgment. Plaintiffs are James Ragland and his son, James T. Ragland (hereinafter "Todd"). The defendant is Nationwide Mutual Insurance Company, the insurer of the Ragland motor vehicles at the time the events in question occurred. Besides the testimony and exhibits presented at the

2

trial, the parties' counsel have submitted post-trial memoranda for the court's consideration.

On August 4, 1983, Todd Ragland was injured while riding as a passenger on a motorcycle operated by one Randall Workman. Workman's liability protection consisted of a financial responsibility bond with maximum coverage of $12,500. This sum was paid to Todd Ragland after he filed a complaint on July 3, 1985 against Workman seeking $200,000 in compensatory damages. The complaint alleged that Todd Ragland had sustained injuries of a permanent nature.

On August 1, 1985, Todd's attorney notified the defendant insurance company about his client's personal injury claim against Workman, the limit of Workman's coverage, and his belief that Todd was covered by the underinsured motorist coverage of defendant's policy with James J. Ragland. A month later defendant insurer confirmed in writing its position that the policy did not provide coverage.

The two issues in this case concern Todd's status as a relative living in the policyholder's household and a timeliness question, i.e., whether or not plaintiffs began arbitration or legal action against defendant within two years as required by the insurance policy.

In regard to the first issue, the court begins its analysis with the finding of fact that plaintiff, Todd Ragland, was living in his father's household at the time the accident occurred.

The court however further finds that defendant's insurance agent instituted a change in James Ragland's policy in mid-May 1982 after he discovered that Todd's separate automobile policy had lapsed due to non-payment of the premium. Because the agent believed Todd was residing with his parents, he listed Todd as a driver of one of the vehicles covered by the policy. Notice of this addition and the attendant increase in the premium were sent to the senior Ragland on May 17, 1982. Ten days later, a handwritten notation on the agent's office copy of the notice was made, stating, "MYD [Male Youthful Driver] does not reside with policy holder — should not be added on this policy per policy holder May 27, 1982." In response to this information, agent Curley notified the insurance company that his recent change should be rescinded. The company took appropriate action by issuing a revised premium notice and declaration statement to the policyholder. This revision remained unchanged through the date of Todd's accident.

The court finds from the weight of the evidence that such a representation, stating that Todd Ragland no longer lived in the policyholder's home, was in fact made to the insurer's agent by plaintiff.

This action of plaintiff creates a defense of estoppel. The concept of estoppel is defined in rule form in *First Federal S. & L. Assn.* v. *Perry's Landing, Inc.* (1983), 11 Ohio App. 3d 135, 145, 11 OBR 215, 226, 463 N.E. 2d 636, 647, as follows: "* * * [O]ne party will not be permitted to deny that which, by his words, his acts, or his silence (when there was an obligation to speak), he has induced a second party reasonably and in good faith to assume and rely upon to that party's prejudice or pecuniary disadvantage." The four essential elements of estoppel, according to *First Federal* are:

(1) there must be something in the nature of a representation by words, acts, or silence and the representation must be a factual one known to the party at the time he makes it, or at least the circumstances must be such

that he is chargeable with knowledge of them;

(2) the representation must communicate some fact or state of affairs in a misleading way;

(3) the representation must induce actual reliance by the second party, and such reliance must be reasonable under the circumstances and made in good faith; and

(4) the relying party would suffer prejudice or pecuniary disadvantage if the party whose representation was relied upon were not estopped or precluded from asserting an otherwise valid right in contradiction to his earlier representation. *Id.* at 145, 11 OBR at 226-227, 463 N.E. 2d at 648.

As indicated by the earlier discussion, the senior Ragland's words satisfy the first estoppel element since he represented that his son no longer resided with him, a fact which certainly must have been known to him at the time it was made. At the same time, the representation was done in a misleading way because the assertion that Todd was no longer living at home was intended to eliminate him as one of the drivers under the policy, thereby eliminating the premium increase too. The representation had the desired effect in that the agent did rely on it as shown by the revised premium notice and declarations statement sent to the father eleven days after the phone call was made. The agent's reliance was reasonable under the circumstances since Todd was nineteen years old at the time, a normal age for a son to discontinue living with his parents. The agent's good faith was shown by his prompt action in revoking the change he had previously instituted and the associated loss of revenue both to the agent and the insurance company. In regard to the fourth estoppel element, it is apparent that the relying party, defendant herein, will suffer pecuniary disadvantage if the representing party is not estopped. Todd's status as a relative living in the household makes him an insured person under the policy's terms and subjects the insurance company to a liability potentially as high as $25,000 under the underinsured motorist coverage.

Plaintiffs' counsel argues that the defendant's estoppel defense is not pertinent to their claim since Todd was not a driver in the accident which caused his injuries. Because the premium reduction came about only because it was believed a male youthful driver was no longer in the home, counsel asserts that Todd's driver status should be disassociated with his resident status for the purpose of the underinsured motorist coverage. In other words, the coverage looks to whether a party is an insured person under the policy, not to whether he is listed as one of the vehicle drivers.

Counsel's argument misses the mark under the fourth estoppel element. This element has two features. The first requires examination of the prejudice or pecuniary disadvantage the relying party *will* suffer, not what the party has suffered in the past. In this case, the defendant is looking ahead to a possible $25,000 loss. The second feature recognizes that the representing party has a valid right but questions whether or not he should be allowed that right because it hinges upon a fact contrary to one which was represented before the claim arose. Here, Todd's valid right springs from the fact that he resides in a place where he has a filial relationship to the policyholder. This status is contrary to the exact representation which induced defendant's good faith reliance several years ago. In short, the situation is one where the shoe fits the estoppel defense. Under the ethical and equitable premises upon which the estoppel defense concept rests, a court cannot allow a party to undo words

which he now wishes had not been spoken because another party has already relied on those words. It is irrelevant how material the representation was to the policy's provisions; it is only relevant to the defendant's consideration for his contract because it shows the company's past reliance. This issue is not fraud or misrepresentation (see *First Federal, supra*); the concern is a representation of fact which plaintiffs now wish to disavow because it affects Todd's valid claim.

Plaintiffs' counsel also argues that the defendant is barred from asserting the estoppel defense since it is an affirmative one which the defendant failed to plead as required by Civ. R. 8(C). He cites Civ. R. 12(B) as support for his contention.

The court assumes counsel intended to cite Civ. R. 12(H) as his authority since that subsection discusses waiver of defenses and objections. His argument would be sound were it not for the amendment to subsection (H) which became effective on July 1, 1983. The amendment, as construed by the Ohio Supreme Court, now provides solely for waiver of the particular defenses listed in Civ. R. 12(B)(1) to (7). *Hoover* v. *Sumlin* (1984), 12 Ohio St. 3d 1, 4, 12 OBR 1, 3, 465 N.E. 2d 377, 379. *Hoover* explains the import of the rule's change by noting that, prior to the 1983 amendment, Civ. R. 12(H) was amenable to a broader interpretation as it stated "all defenses" were waived if not raised in a Civ. R. 12 motion, a responsive pleading or in an amendment to a pleading made as a matter of course. *Id.*

*Hoover's* major thrust, however, was its evaluation of the impact Civ. R. 15 has in the situation where a party fails to plead one of the affirmative defenses listed in Civ. R. 8(C). The opinion cites with approval the language in *Bobbitt* v. *Victorian* *House, Inc.* (N.D. Ill. 1982), 532 F. Supp. 734, 736, which states:

"Rule 8(c) requires a party to set forth any affirmative defense in a responsive pleading. Failure to do so may waive the right to present evidence at trial on that defense. * * * In the real world, however, failure to plead an affirmative defense will rarely result in waiver. Affirmative defenses — like complaints — are protected by the direction of Rule 15(a) that courts are to grant leave to amend pleadings freely * * * when justice so requires. Accordingly, failure to advance a defense initially should prevent its later assertion only if that will seriously prejudice the opposing party."

Another *Hoover* observation directly treats the circumstances herein. The decision says:

"Indeed, even *after* the trial, Civ. R. 15(B) (as well as the language of our holding in *Mills* [v. *Whitehouse Trucking Co.* (1974), 40 Ohio St. 2d 55, 69 O.O. 2d 350, 320 N.E. 2d 668], *supra*) would permit the amendment of pleadings to reflect issues which were tried, explicitly or implicitly, with the consent of the parties." 12 Ohio St. 3d at 5, 12 OBR at 4, 465 N.E. 2d at 380-381.

The affirmative defense issue was explicitly tried with the parties' consent in this case. Furthermore, the plaintiffs had some indication from the defendant's pleading that the defense would be raised because it lists the assertion that Todd Ragland did not reside in his father's household as one of the defenses. Accordingly, defendant is instructed to amend its pleading to reflect the estoppel defense.

Turning now to the timeliness issue, the focus here is on the provision in the insurance policy under Section 8, "Legal Action Limitations," which states:

"Under the Uninsured Motorists coverage, any arbitration or legal ac-

tion against the company must begin within the time limit allowed for bodily injury or death actions in the state where the accident occurred."

This provision is applicable to this case inasmuch as Endorsement 1604, "Supplementary uninsured motorists coverage," defines an uninsured motor vehicle as one which includes an underinsured motor vehicle.

This issue arises because plaintiffs filed their action on October 23, 1985, more than two years, two and one-half months after Todd was injured in the motorcycle accident. The Ohio limitations period for bodily injury is two years. R.C. 2305.10. From the time it was first notified of the accident, defendant has relied on the tardiness of plaintiffs' claim to support its denial of coverage under the above provisions.

Plaintiffs' counsel, however, directs attention to *Grange Mut. Cas. Co.* v. *Fodor* (1984), 21 Ohio App. 3d 258, 21 OBR 302, 487 N.E. 2d 571, because of its holding that a contractual limitations provision, whose language is nearly identical to the words quoted above, was ambiguous and not clear and easily understood by a lay person. *Id.* at 262, 21 OBR at 306, 487 N.E. at 575. As a result, *Fodor* found the limitation to be invalid and unenforceable. *Id.* citing *Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593, 23 O.O. 3d 495, 433 N.E. 2d 547.

Defendant's counsel rebuts plaintiffs' ambiguity argument in two ways. First, he points out that *Fodor's* reliance on *Ady* was misplaced as shown by the Supreme Court's subsequent evaluation of *Ady* in *Hedrick* v. *Motorists Mut. Ins. Co.* (1986), 22 Ohio St. 3d 42, 22 OBR 63, 488 N.E. 2d 840. *Hedrick* notes at 44, 22 OBR at 64, 488 N.E. 2d at 842:

"This court, however, does not find this language in *Ady* controlling. *Ady* was a plurality opinion. Only the syllabus received the requisite four votes. Thus, the only law emanating from *Ady* is contained in the syllabus, which provides as follows: 'Any contractual restriction on the coverage mandated by R.C. 3937.18 must comply with the purpose of this statute.' The general language contained in the opinion or in the concurrence, however interpreted, is simply not the law of Ohio."

Counsel next cites *Potter* v. *Grange Mut. Cas. Co.* (Jan. 23, 1984), Butler App. No. CA83-07-078, unreported, because he found the following portion of the trial court's decision worth quoting:

"The language of the policy now before the Court contains terminology much too complex and is hardly subject to interpretation by a layman. However, if we invalidate this provision solely because of its overbearing, legalistic language, then we would have to take a like position, for the same reason, on most any portion of the policy which may come to issue before this court. We find most of the policy language to be unintelligible to the average layman (and most lawyers too)." *Id.* at 5.

This court does not interpret this dicta to mean *Potter* sweeps away Ohio's prevailing law on ambiguous terms in insurance contracts. In *American Financial Corp.* v. *Fireman's Fund Ins. Co.* (1968), 15 Ohio St. 2d 171, 173, 44 O.O. 2d 147, 148, 239 N.E. 2d 33, 35, the Supreme Court reiterated one of the basic rules for construing insurance contracts as follows:

"It is a fundamental rule of law that a contract of insurance prepared by an insurer and in language selected by the insurer must be construed liberally in favor of the insured and strictly against the insurer if the

6

language used is doubtful, uncertain and ambiguous."

*Fodor,* too, warrants a closer look, particularly where it makes a crucial distinction between the disputed provision in its case and the one in *Colvin* v. *Globe American Cas. Co.* (1982), 60 Ohio St. 2d 293, 23 O.O. 3d 281, 432 N.E. 2d 167, and *Globe American Cas. Co.* v. *Goodman* (1974), 41 Ohio App. 2d 231, 70 O.O. 2d 447, 325 N.E. 2d 257, which required that action against the company be "commenced within twelve months next after the date of the accident." *Fodor, supra,* at 262, 21 OBR at 306, 487 N.E. 2d at 575. The distinction, as perceived by the *Fodor* court, is:

"No reasonably educated non-lawyer could be expected to understand the * * * [limitation]. Only by retaining services of an attorney to research the matter could an insured discover what his rights and duties are under Grange Mutual's limitation clause." *Id.*

*Fodor* found that the ambiguity of the limitations clause arose because it did "not provide *any express and specific period of* limitation." (Emphasis *sic.) Id.*; see, also, *American Financial Corp., supra,* at 174, 44 O.O. 2d at 148, 239 N.E. 2d at 35 (language must be specific in its use). Moreover another feature of the policy, one that is parallel to the court's earlier discussion of the first issue, compounds the lack-of-specificity problem. The parallel concerns a representation made by defendant at the beginning of the policy. In bold print, it states: "Now — auto insurance protection you can count on in a policy you can understand." It goes on to inform the policyholder that he has a different kind of insurance policy, one "that's readable, understandable, straightforward." When one superimposes this assertion on *Fodor's* observation that a policyholder would have to retain a lawyer to understand the limitations provision, the two highlight the incomprehensible character of the limitation.

Thus, *Fodor's* analysis, combined with defendant's representation about the understandable quality of its policy, convinces this court that the limitations clause herein is ambiguous and therefore unenforceable. As for plaintiffs' other arguments about tolling and the September 18, 1985 date being the time when their underinsurance claim arose, the court finds these are without merit.

All issues having been addressed, the court summarizes its conclusions by stating that, even though plaintiffs have established ambiguity in the limitations provision of the policy, their claim fails due to defendant's estoppel defense. Shortcomings in the policy's language do not override the fact that plaintiffs have no right to underinsured motorist coverage since Todd cannot be treated as an "insured" under the contract.

*Judgment accordingly.*