SACHS, Appellant,

v.

AMERICAN ECONOMY INSURANCE COMPANY et al., Appellees.

[Cite as *Sachs v. Am. Economy Ins. Co.* (1992), 78 Ohio App.3d 440.]

Court of Appeals of Ohio,
Ottawa County.

91OT011.

Decided Feb. 28, 1992.

*Dale Kline,* for appellant.

*Thomas Furey* and *William Kroncke,* for appellees.

ABOOD, Judge.

This is an appeal from a summary judgment entered by the Ottawa County Court of Common Pleas in favor of appellees, American Economy Insurance Company and O'Brien–Durnwald Realty & Insurance Company, on appellant Randall I. Sachs' complaint for declaratory judgment which sought a determination that the underinsured motorist coverage of his insurance policy is equivalent to that of the liability coverage.

Appellant sets forth two assignments of error:

"1. The trial court erred in granting the insurance company's motion for summary judgment when reasonable minds could differ as to whether an insured had made an express election to reduce underinsured coverage by signing, but not completing, a 'reduction/rejection form.'

"2. The Court erred in denying the insured's motion for summary judgment as to the amount of underinsured motorist coverage available to persons other than the insured himself since the insurer's 'reduction/rejection form' misrepresented uninsured/underinsured coverages as protection only 'If you suffer bodily injury or death' and did not advise that Ohio law also required such coverages for persons other than the named insured."

The facts that are relevant to a determination of the issues raised by this appeal are as follows. On September 27, 1987, appellant was involved in a serious automobile accident with an underinsured motorist. At the time, appellant was driving his 1982 GMC step van which was insured by a commercial insurance policy which he purchased from appellee. The policy contains single-limit liability coverage in the amount of $300,000 for the term January 3, 1987 to January 3, 1988. When appellant presented a claim for underinsured motorist coverage, appellee denied coverage beyond $50,000 on the basis that appellant had previously reduced his underinsured coverage to $50,000. On September 22, 1989, appellant filed a complaint in the Ottawa County Court of Common Pleas which demanded that the court declare the policy limits of the underinsured coverage to be $300,000. Subsequently, all parties moved for summary judgment; the sole issue presented to the trial court by the parties was whether appellant had expressly rejected (by way of reduction) underinsured motorist coverage in an amount equal to the liability limits of the policy. The record before the trial court consisted primarily of the deposition testimony of appellant and James P. O'Brien, along with several exhibits attached to the depositions, including the following rejection form which is the focus of the controversy:

"UNINSURED/UNDERINSURED MOTORISTS COVERAGE REDUCTION/REJECTION FORM

"If you suffer bodily injury or death for which an uninsured or underinsured motorist is legally liable, Uninsured/Underinsured Motorists Coverage will protect you and your family within the terms and limits of the policy.

"Your state requires us to offer Uninsured/Underinsured Motorists Coverage equal to the Bodily Injury Liability limits of your auto policy. However, you do have the option of purchasing lower limits or rejecting the entire coverage.

"Therefore, if you previously requested or now wish to select lower limits or reject the coverage entirely, you are to *complete* this form and return it to your agent.

"☐ I do not want Uninsured/Underinsured Motorist Coverage equal to the bodily injury limits of my policy and request limits of 50,000 /

"☐ I reject Uninsured/Underinsured Motorists Coverage entirely." (Emphasis added.)

The figure "50,000" is handwritten. The remainder of the form contains appellant's signature and the policy number.

Appellant testified at his deposition as follows:

"Q. Do you remember a discussion with O'Brien in January of 1987 concerning your limits on uninsured or underinsured motorist coverages?

"A. January of 1987?

"Q. Yes[.]

"A. I don't remember discussing the limits, no.

" * * *

"Now, I show you what's marked Defendant's Exhibit B (rejection form) and ask you to take a look at that for me, and read it over, please.

"Okay. Is that your signature that appears on that document?

"A. Yes, that's my signature.

"Q. Have you seen that document before?

"A. Yes, I have.

"Q. Where were you when you saw it?

"A. In my house.

"Q. And how did that document come to your house?

"A. Through the mail.

"Q. Did you ask that it be sent?

"A. No, I did not.

"Q. Did you ever check the contents of that notice with anyone at the O'Brien–Durnwald Agency?

"A. No, I did not.

" * * *

"Q. Okay. Did you discuss with Mr. O'Brien ways that you could decrease the premium?

"A. No, I did not.

"Q. Did you have any discussions with him, whatsoever, about that premium?

"A. No, I did not. Not to my knowledge, I don't believe so.

" * * *

"Q. Okay. Your testimony is that you did not understand the meaning of Exhibit B when you signed it?

"A. That's correct.

"Q. But, yet, you signed it without asking Mr. O'Brien what it meant?

"A. I had received several of these different things through the mail, and I did not return, I don't know how many of them, and there was a note, or something, that came only with this saying, I have to have this back. I signed it and sent it back. I did not fill in either one of these blocks, because I didn't understand it.

"Q. Was the figure $50,000 filled in?

"A. I don't know if the figure $50,000 was written in there or not.

" * * *

"Q. You knew what U.M. coverage was?

"A. Not really, no."

O'Brien testified at deposition that appellant had obtained insurance coverage from him over the course of many years, including policies covering his personal and commercial vehicles; that appellant had, before the accident, reduced underinsured coverage on both the personal and commercial policies; that appellant's van was previously insured by another insurance company with reduced underinsured coverage; that appellee acquired that other insurance company and it was appellee's " * * * policy to, if they did not have a signed U.M. form, being uninsured motorist form, in their file they would issue it at the same limits as * * * liability * * * limits * * *, then it was up to the agent [to obtain] an endorsement to either alter it or keep it the way it was"; that pursuant to this policy appellee issued insurance to appellant covering his van with $300,000 of uninsured/underinsured coverage; that

appellant came to his office in January of 1987 questioning the increase in premium resulting from the increase of uninsured/underinsured coverage and indicated that he wished to reject such coverage on his van entirely; that he convinced appellant to maintain $50,000 of uninsured/underinsured coverage on the van, which was the minimum that appellee would write; and that appellant agreed to this, signed the rejection form in his presence, and the "50,000" figure was written on the rejection form pursuant to the agreement and prior to signing.

On December 20, 1990 and January 17, 1991, the trial court filed its decision and judgment entry, respectively, which denied appellant's motion for summary judgment and found that " * * * there are no genuine issues as to any material facts and each Defendant is, as a matter of law, entitled to judgment." The trial court also found, particularly, that: "There is nothing on this form indicating the box must be checked." It is from this judgment that appellant brings this appeal.

This court finds, preliminarily, that the issue raised by appellant's second assignment of error is not properly before us.

"Since [appellant] neither raised nor argued this issue in the trial court, it may not do so here. The scope of our review is appropriately circumscribed by the rudimentary appellate doctrine that issues (constitutional or otherwise) which are neither raised in nor reached by the lower court will not be passed upon by this court." *State v. Geraldo* (1983), 13 Ohio App.3d 27, 28, 13 OBR 29, 30, 468 N.E.2d 328, 330.

Further, the insurance contract defining the term "you" has not been made a part of the record, and this court can only consider matters contained in the record. *State v. Flonnory* (1972), 31 Ohio St.2d 124, 130, 60 O.O.2d 95, 99, 285 N.E.2d 726, 731.

Accordingly, appellant's second assignment of error is not well taken.

The issue raised by appellant's first assignment of error is whether the trial court erred in finding that, as a matter of law, appellant expressly rejected underinsured motorist coverage in an amount equivalent to the policy limits of liability.

Civ.R. 56(C) provides, in pertinent part, that:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A

summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

R.C. 3937.18 provides, in pertinent part, that:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following are provided:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *;

"(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.

" * * *

"(C) The named insured may only reject or accept both coverages offered under division (A) of this section. The named insured may require the issuance of such coverages for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent, that shall be no less than the limits set forth in section 4509.20 of the Revised Code for bodily injury or death. * * * "

The Supreme Court of Ohio has held that R.C. 3937.18 is not a mere regulatory statute, but requires automobile liability policies issued in Ohio to contain an uninsured motorist provision. Such provision can be eliminated " * * * only by the express rejection of that provision by the insured." Without such express rejection, such provision " * * * is provided to the insured by operation of law." *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 50 O.O.2d 229, 258 N.E.2d 429, paragraphs one and two of the syllabus. See, also, *Poots v. Motorist Ins. Co.* (1986), 38 Ohio App.3d 48, 526 N.E.2d 71, paragraph one of the syllabus; *Inman v. Natl. Union Fire Ins. Co. of Pittsburgh* (1989), 49 Ohio App.3d 122, 550 N.E.2d 530, paragraph one of the syllabus; *Prudential Ins. Co. v. Marshall* (1982), 1 Ohio Misc.2d 14, 1 OBR 337, 440 N.E.2d 71, paragraphs one and two of the syllabus.

The burden of proving that the customer expressly rejected equivalent coverage falls upon the insurer. *Ady v. West American Ins. Co.* (1982), 69 Ohio St.2d 593, 597, 23 O.O.3d 495, 498, 433 N.E.2d 547, 549; *Poots, supra,* at

paragraph three of the syllabus. The insurer must prove that the customer was aware of the contractual provision, understood its terms and agreed to it. *Ady, supra,* at 597, 23 O.O.3d at 498, 433 N.E.2d at 549. The insurer's burden is generally met by showing that the customer signed a separate provision rejecting equivalent amounts of uninsured motorist coverage, that the language in the provision was clear and conspicuous, and that the signature was not the result of restraint, disability or misunderstanding. *Brady v. Universal Underwriters* (1973), 37 Ohio App.2d 107, 66 O.O.2d 198, 307 N.E.2d 548, syllabus; *Jackson v. West American Ins. Co.* (May 30, 1986), Lucas App. No. L–85–256, unreported, 1986 WL 6068.

 Generally, words and phrases used in an insurance policy must be given their natural and commonly accepted meaning. *Gomolka v. State Auto Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 275, 436 N.E.2d 1347, 1348. Where, however, any ambiguous terminology is utilized, this ambiguity must be construed strictly against the insurer and liberally in favor of the insured, with the result that the uninsured motorist coverage is for an amount equivalent to liability. *Inman, supra,* at paragraph two of the syllabus. These rules pertaining to elimination of reduction of uninsured motorist coverage apply equally to elimination or reduction of underinsured motorist coverage. *Jackson, supra.*

 In this case, although separate and conspicuous, the rejection form clearly states that if appellant wishes to select lower uninsured/underinsured limits, he is to *complete* the form and return it to his agent. The rejection form does not define the word "complete." "Complete" is defined in Webster's Ninth New Collegiate Dictionary (1989) 269, in pertinent part, as " * * * having all necessary parts * * * brought to an end * * * fully carried out * * *." In Black's Law Dictionary (1990) 285, "complete" is defined, in pertinent part, as " * * * Full; entire; including every item or element * * * without omissions or deficiencies; * * * Perfect; consummate; not lacking in any element or particular * * *." In light of these definitions, the word "complete" as used in the rejection form is, at best, ambiguous as to whether the rejection is effective in the absence of a designation indicating which election is made. Construing this ambiguity strictly against the insurer and liberally in favor of the insured, this court must find that the rejection form, on its face, is incomplete. If the rejection form were the only evidence before this court, we would have to conclude that no genuine issue of material fact remains and that reasonable minds could only conclude that no express rejection was made by appellant. The testimony of O'Brien, however, constitutes evidence extrinsic to the rejection form which explains that, although the rejection form is incomplete on its face because no designation is indicated, the

handwritten "50,000" figure was inserted pursuant to a designation which had in fact been made by appellant and, therefore, the rejection form is complete. This evidence is disputed, however, by appellant's testimony.

Upon consideration of the entire record of proceedings before the trial court in this case and the law, this court finds that a genuine issue of material fact remains as to whether appellant expressly rejected underinsured motorist coverage in an amount equivalent to liability by signing the rejection form and that, therefore, the trial court erred in granting summary judgment in favor of appellees.

Accordingly, appellant's first assignment of error is well taken.

Upon consideration whereof, this court finds that substantial justice has not been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas entering summary judgment in favor of appellees is reversed. This cause is remanded to said court to proceed to a trial on the merits.

*Judgment reversed*
*and cause remanded.*

GLASSER and MELVIN L. RESNICK, JJ., concur.