DECISION AND JUDGMENT ENTRY
This case is before the court following the September 28, 2001 judgment entry of the Lucas County Court of Common Pleas which granted, in part, partial summary judgment in favor of appellee, Royal Insurance Company of America ("Royal"). For the reasons stated herein, we affirm the decision of the trial court.
The following facts are relevant to this appeal. On April 12, 1999, appellees Sharon Kasson and her minor daughter, Caitlyn Kasson, were in Kasson's vehicle when it was negligently struck by a vehicle operated by Ronald R. Goodman. Both appellees sustained injuries.
On the date of the accident, Kasson has a motor vehicle liability policy with Royal. Further, although she was not working at the time of the accident, Kasson was employed by Manor Homes, Inc. which had two insurance policies issued by appellant The Cincinnati Insurance Company ("CIC").
Appellees filed a complaint in this case on February 29, 2000. An amended complaint was filed on April 16, 2001. Appellees' complaint included uninsured/underinsured motorist coverage claims against Royal and CIC. The underinsured ("UIM") claim against CIC was under its Business Auto Insurance Policy ("auto policy"), Policy No. CAP 500 74 67, and Professional Umbrella Liability Policy ("umbrella policy"), Policy No. CCC 437 50 37, and pursuant to Scott-Pontzer v. Liberty Mut.Fire Ins. Co. (1999), 85 Ohio St.3d 660, and its progeny.
On May 4, 2001, CIC filed an answer and counterclaim. The counterclaim requested that the court declare that no UIM coverage was available under the auto policy or umbrella policy that it issued to Manor Care. Particularly, CIC claimed that: the policies list individual named insureds precluding appellees from asserting a claim; appellees failed to promptly notify CIC of the claim; the motor vehicle Kasson was operating was excluded as it was not specifically identified in the policy; if CIC should be deemed insured, any coverage is excess to any policies of the tortfeasor or Kasson; underinsured coverage was waived; and appellees' claims do not exceed the coverage available under the tortfeasor or Kasson's policies.
CIC filed its motion for summary judgment on July 2, 2001. CIC expanded upon the above claims arguing that appellees were not entitled to UIM coverage based upon Scott-Pontzer, supra. CIC distinguishedScott-Pontzer arguing that the CIC polices listed named insureds and was, therefore, unambiguous.
On July 2, 2001, Royal also filed a motion for partial summary judgment as to CIC's declaratory judgment action. Royal requested the court to declare that both auto insurance policies provide primary UIM coverage on a pro rata basis, that CIC's umbrella policy also provides UIM coverage on a pro rata basis, and that the policy limits available for pro rata division are Royal — $300,000 and CIC — $2,500,000.
In its motion, Royal argued that because each policy provides coverage for the same risk, both Royal and CIC should have the primary obligation to provide insurance coverage. Royal contended that each company should be responsible in proportion to the amount of insurance provided.
On September 28, 2001, the trial court granted, in part, Royal's motion for partial summary judgment. The court found that Kasson qualified as an insured under both the CIC auto and umbrella policies and that, depending on her damages, she was entitled to receive $2,500,000 UIM coverage from CIC. Caitlyn Kasson was found to be a insured under the CIC auto policy only. The court found that Caitlyn, depending on her damages, was entitled to receive $500,000 UIM coverage from CIC. The court further found that the Royal and CIC policies provided primary coverage and, thus, the amounts would be prorated based upon the amount of coverage. This appeal timely followed.
CIC now raises the following assignment of error:
 "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT."
In its sole assignment of error, CIC challenges the trial court's denial of its motion for summary judgment and, by implication, the trial court's granting of partial summary judgment to Royal. At the outset we note that an appellate court reviews a trial court's ruling on a summary judgment motion de novo. Conley-Slowinski v. Superior Spinning Stamping Co. (1998), 128 Ohio App.3d 360, 363. To succeed on a Civ.R. 56(C) motion for summary judgment, the movant must demonstrate that:
 "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679.
A party claiming to be entitled to summary judgment on the grounds that a nonmovant cannot prove his or her case bears the initial burden of specifically identifying the basis of its motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact as to an essential element of the nonmovant's case.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The movant satisfies this burden by presenting competent summary judgment evidence, of a type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmovant has no evidence to support his or her claims. Id. Once the movant satisfies this initial burden, the burden shifts to the nonmovant to produce specific facts, in the manner prescribed by Civ.R. 56(E), indicating that a genuine issue exists for trial. Id. Accord Vahila v.Hall (1997), 77 Ohio St.3d 421, 429-430; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 114-115.
CIC presents four primary arguments in support of its assignment of error. First, CIC argues that appellees were not insureds under its auto policy and that Kasson was not an insured under the umbrella policy. CIC next contends that UIM coverage under the auto policy applies only to covered autos and that appellees were not in a covered auto at the time of the accident. CIC further argues that the auto policy contains an exclusion which, even assuming appellees are insured under the auto policy, precludes coverage. Finally, CIC asserts that assuming that coverage is available under the CIC policies, such coverage is in excess over that provided by Royal. We shall address each argument in the order presented.
 I. COVERAGE UNDER THE AUTO POLICY
A. Interpretation of "Insured"
The Common Policy Declarations page of the CIC auto policy lists the following as named insureds: "MANOR HOMES, INC., MCCLELLAN MANAGEMENT CO., INC. /OR WILLIAM J. MCCLELLAN JOSHUA MCCLELLAN". Further, for purposes of UM/UIM coverage an insured is defined in the policy as follows:
"B. Who is an Insured
"1. You.
"2. If you are an individual, any `family member'.
 "3. Anyone else `occupying' a covered `auto', or a temporary substitute for a covered `auto'. The covered `auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
 "4. Anyone for damages he or she is entitled to recover because of `bodily injury' sustained by another `insured'." The policy further defines "you" and "your" as the "named insured" listed in the declarations.
CIC contends that the because the declarations page lists as named insureds specific individuals in addition to the corporation(s), any ambiguity similar to that in Scott-Pontzer was eliminated. Appellees and Royal contend that use of the word "you" as applied to the named corporations in the declarations page, irrespective of the named individuals, creates an ambiguity as to whether the "you" applies to the corporations' employees.
We first note that it is well-established that in order to determine whether the terms in a contract are ambiguous, a court must generally give words and phrases their plain, ordinary or common meaning. Gomolkav. State Auto. Mut. Ins. Co. (1982), 70 Ohio St.2d 166, 167-168. If a contract is clear and unambiguous, its interpretation is a matter of law and there is no issue of fact. Nationwide Mut. Fire Ins. Co. v. GumanBros. Farm (1995), 73 Ohio St.3d 107, 108. "`Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.'" Scott-Pontzer, supra, at 664, quoting King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus.
The parties' arguments revolve around the interpretation of the Supreme Court of Ohio's decision in Scott-Pontzer v. Liberty Mut.Fire Ins. Co., 85 Ohio St.3d 660. In Scott-Pontzer, the decedent was killed by the negligence of another driver while operating a vehicle owned by his wife Id. at 660-661. Pontzer was employed by Superior Dairy, though he was not acting within the course and scope of his employment at the time of his death.
Superior Dairy maintained a commercial auto policy and excess/umbrella policy. Id. at 661. The commercial policy's declarations page listed only the corporation as the named insured. Reviewing the policy language, the Supreme Court of Ohio concluded that the policy could be interpreted to include company employees. Id. at 664. The court reasoned that because a corporation can only act through live persons, it would be "nonsensical" to limit coverage to the corporate entity. Id.
Upon review of the declarations page and the definition of "insured" in the CIC auto policy, we find that the addition of two individual insureds does not remove the ambiguity created by the inclusion of corporate insureds. We find the reasoning of the Fifth Appellate District persuasive on this matter.
In Burkhart v. CNA Ins. Co., Stark App. No. 2001CA00265, 2002-Ohio-903, Burkhart was operating his automobile when it was negligently struck by another motorist. Id. at ¶ 2. At the time of the accident, Burkhart was employed by Western Branch Diesel, Inc. Id.
The court found that Burkhart met the definition of an insured under Western Branch's primary policy, containing a business auto policy and commercial general liability policy, and the umbrella policy. Id. at ¶ 16 The court determined that Burkhart was an insured despite the fact that the declarations page listed named individuals as well as corporate entities. Id. at ¶ 15. Applying Scott-Pontzer to theBurkhart facts, the court reasoned:
 "Although specific individuals are named insureds under the Continental policies, such fact does not cure the ambiguity created when `you' refers to Western Branch Diesel, Inc. as the named insured. The rational announced by the Ohio Supreme Court in Scott-Pontzer is applicable to the instant matter. If the policies only afforded coverage to the specific individuals named, the inclusion of Western Branch as a named insured would be superfluous." Id. at ¶ 16.
Accord, Still v. Indiana Ins. Co., Stark App. No. 2001CA00300, 2002-Ohio-1004.
Based on the foregoing we find that appellees meet the definition of "insured" under the auto policy.
B. Exclusions
We must now determine whether any of the exclusions in the auto policy apply to preclude coverage. CIC first refers to the business auto declarations which lists that the "covered autos," for purposes of UM/UIM coverage, as symbol "7". Symbol "7" is defined in the Business Auto Coverage Form as:
"SPECIFICALLY DESCRIBED `AUTOS'.
Only those `autos' described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any `trailers' you don't own while attached to any power unit described in ITEM THREE)."
Item three of the declarations provides a list of sixteen vehicles, by make and model, that are covered under the policy. Kasson's vehicle is not included.
The definition of a covered auto corresponds with the "other-owned" vehicle exclusion contained in the uninsured coverage endorsement which relevantly provides:
"C. Exclusions
"This insurance does not apply to:
"* * *
 "5. `Bodily injury' sustained by an `insured' while the `insured' is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided."
Arguing that the "other-owned vehicle" exclusion precludes coverage, CIC disputes the trial court's finding that the "named insured" language in the exclusion applies only to those individuals explicitly set forth in the declarations page. In other words, the trial court found that while appellees were "insureds" based upon the ambiguity in the declarations page, they were not "named insureds" for purposes of the exclusion.
Scott-Pontzer's holding states that if there is an ambiguity in the policy, the policy must be construed strictly against the insurer and liberally in favor of the insured. Scott-Pontzer at 664. The policy defines "you" as the "named insured" listed in the declarations. Because we have found "you" to be ambiguous as it pertains to the corporate named insureds, we, according to Scott-Pontzer, must construe who is a "named insured" more strictly. Thus, we find that while appellees are insureds under the auto policy, they are not "named insureds" and the C5 exclusion does not apply. Accord Purvis v. Cincinnati Ins. Co., Greene App. No. 2001-CA-104, 2002-Ohio-1803. Accordingly, the trial court properly concluded that appellees are entitled to coverage under the auto policy.
 II. COVERAGE UNDER THE UMBRELLA POLICY
The CIC umbrella policy's declarations page lists the following as named insureds: "MANOR HOMES. INC., MANOR HOMES, INC. DBA RICHLAND MANOR NURSING HOME, MCCLELLAN MANAGEMENT CO., INC., MCCLELLAN MANAGEMENT CO., INC. DBA GENOA CARE CENTER, WILLIAM J. MCCLELLAN".
The umbrella policy defines "insured" in relevant part, as follows:
"SECTION II — WHO IS AN INSURED
"1. If you are designated in the Declarations as:
"* * *
 "d. An organization other than a partnership, joint venture, or limited liability company, you are an insured.
"* * *
"2. Each of the following is also an insured:
 "a. Any `executive officer', director, `employee' or stockholder of yours while acting within the scope of their duties as such."
The CIC umbrella policy states on the declarations page that the relevant policy period was from March 19, 1997 to March 19, 2000. Named insured, Joshua McClellan, purportedly rejected uninsured/underinsured coverage under the umbrella policy.
The parties do not dispute that Caitlyn Kasson does not fall under the definition of insured under the umbrella policy. CIC first argues that, just as the auto policy, Sharon Kasson is not entitled to coverage under the umbrella policy because the declarations page lists an individual as a named insured. CIC also argues that because the accident occurred while Kasson was not acting within the course and scope of her employment she is excluded from coverage under the policy. CIC further contends that UIM coverage has not arisen by operation of law.
We first note that, based upon our determination that appellees are insureds under the auto policy and finding that the same ambiguity exists as to the umbrella policy, Sharon Kasson meets the definition of insured under the umbrella policy. We must now determine whether the "scope of employment" provision precludes coverage or whether UIM coverage arises by operation of law.
In its reply brief on the issue of UM/UIM coverage by operation of law, CIC urges us to reconsider our decision in Brodbeck v. ContinentalCas. Co., Lucas App. No. L-01-1269, 2002 Ohio 532. In Brodbeck, accident victim, Kenneth Brodbeck, was employed by The Andersons, Inc., though he was not working at the time of the accident. Id. at ¶ 5. On the date of the accident The Andersons maintained, inter alia, a commercial umbrella insurance policy. Id.
Brodbeck involved an analysis of the same version of R.C. 3937.18(A) employed in this case. In Brodbeck we noted the following:
 "R.C. 3937.18(A) requires that all insurance companies offer UM/UIM coverage with all automobile liability or motor vehicle liability policies of insurance delivered or issued for delivery in this state. If the insurer fails to offer such coverage, UM/UIM coverage is provided by operation of law. Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, 567. This requirement applies equally to policies of excess insurance coverage. Duriak v. Globe American Cas. Co. (1986), 28 Ohio St.3d 70, 72, overruled in part and on other grounds in Miller v. Progressive Cas. Ins. Co. (1994), 69 Ohio St.3d 619. The named insured, however, can reject UM/UIM coverage pursuant to R.C. 3937.18(C), so long as the rejection is made knowingly and expressly. Ady v. West Am. Ins. Co. (1982), 69 Ohio St.2d 593, 597; Abate v. Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161, 165. Absent a knowing and express rejection, coverage is provided by operation of law. Id. Moreover, the Ohio Supreme Court has held that both the offer to provide coverage and the rejection of such coverage must be made in writing before the time that the coverage begins. Gyori, supra at paragraph two of the syllabus. See, also, Schumacher v. Kreiner (2000), 88 Ohio St.3d 358. The burden is on the insurance company to demonstrate that a customer knowingly rejected the coverage. Ady, supra at 597; Gyori, supra at 567-568." Id. at ¶ 30.
The Supreme Court of Ohio subsequently found that a written offer of UM/UIM coverage must contain "a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits." Linko v. Indemn. Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445,449. In Linko, the court found that the insurance company's alleged offer did not contain any of the above elements and, thus, "could not be termed a written offer that would allow an insured to make an express, knowing rejection of the coverage. Id.
In the present case, attached to the umbrella policy was a form captioned "APPLICATION FOR EXCESS UNINSURED/UNDERINSURED MOTORIST COVERAGE". On that form, Joshua McClellan placed a check-mark in the box accompanying the sentence: "I reject Excess Uninsured/Underinsured Motorists coverage under this policy." McClellan signed and dated the form.
Upon review, we find that the purported rejection failed to comply with the Linko requirements. The form does not describe UM/UIM coverage, does not list the premium for such coverage, and does not provide the limits of such coverage. Because the rejection form did not present a valid written offer, McClellan did not effectively reject UM/UIM coverage under the umbrella policy and the coverage arises by operation of law.
Regarding the "scope of employment" exclusion we again turn to our decision in Brodbeck, supra, and our finding that:
 "Scott-Pontzer stands for the proposition that with excess/umbrella policies where UM/UIM coverage is imposed by virtue of R.C. 3937.18 (i.e. by operation of law), even language which limits coverage to an employee acting within the scope of his or her employment is ineffective because it is presumed to apply to excess liability coverage only." Id. at ¶ 49.
Upon review of the arguments set forth by CIC, we are not persuaded to reverse our holding in Brodbeck. Accordingly, we find that Sharon Kasson is entitled to UIM coverage under the umbrella policy.
 III. ROYAL AND CIC'S COVERAGE OBLIGATIONS
CIC argues, alternatively, that if this court determines that appellees are covered under either of the policies that such coverage is in excess to that provided by Royal. Royal, conversely, argues that the policies at issue all provide primary coverage which is to be prorated. The UIM amounts at issue include: Royal-$300,000; CIC-$500,000 auto policy and $2,000,000 umbrella policy.
The Royal policy's UIM provision regarding "other insurance" states:
 "If there is other applicable insurance available under one or more policies or provisions of coverage:
 "1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.
 "2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis.
"3. If the coverage under this policy is provided:
 "a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.
 "b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis."
The CIC auto policy's "other insurance" clause similarly provides:
 "If there is other applicable insurance available under one or more policies or provisions of coverage:
 "a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.
 "b. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis."
"c. If the coverage under this Coverage Form is provided:
 "(1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability of coverage on a primary basis.
 "(2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis."
As to the UIM coverage under the Royal and CIC auto policies, we find the Supreme Court of Ohio's decision in Buckeye Union Ins.Co. v. State Auto. Mut. Ins. Co. (1977), 49 Ohio St.2d 213, to be illustrative. In Buckeye Union, the court held:
 "Where two insurance policies cover the same risk and both provide that their liability with regard to that risk shall be excess insurance over other valid, collectible insurance, the two insurers become liable in proportion to the amount of insurance provided by their respective policies."
In United Ohio Co. v. Bird (May 18, 2001), Delaware App. No. 00 CA 31, the court applied the Buckeye Union reasoning to a Scott-Pontzer UIM coverage situation. In Bird, the employer's insurer, Westfield, argued that its commercial auto policy would be found to provide UIM coverage pursuant to the Scott-Pontzer decision. Id. at 8. However, Westfield contended that in the "Other Insurance" provision in its policy, the word "you" contained no ambiguity and, thus, the Scott-Pontzer definition of "you" was not applicable. Id.
The Bird court found that the interpretation of the word "you" must be applied consistently throughout the policy. Thus, the court concluded:
 "The Scott-Pontzer decision specifically dealt with the term `you' under the `Who is an Insured' provision for purposes of uninsured/underinsured motorist coverage. Since the Ohio Supreme Court has judicially defined the word, unless the policy of insurance provides a different definition under the `Other Insurance' provision of the policy, we must apply the definition of `you' consistently throughout the policy. Thus, Westfield's coverage is not excess coverage and the trial court properly concluded that United Ohio is entitled to indemnification because Westfield and United Ohio must pay on a pro-rata, primary coverage basis. Id. at 11.
Upon review of the other insurance provisions in the Royal and CIC policies, we agree that, applying the definition of "you" consistently in the CIC policy, that Royal and CIC must pay on a primary, prorated basis.
Further, as to the CIC umbrella policy, we likewise conclude that the amount potentially available to Sharon Kasson must be coupled with the amount available under the CIC auto policy and prorated with the Royal policy. The Scott-Pontzer decision provides that any restrictive language in the umbrella policy applies solely to excess liability coverage and not UIM coverage which applied by operation of law. Scott-Pontzer,85 Ohio St.3d at 666.
Based on the foregoing, we find that the trial court properly found that: (1) the inclusion of a specific individual in addition to a corporation(s) in the declarations page does not remove the ambiguity of the definition of "you"; (2) the "other-owned auto" exclusion is inapplicable; (3) UIM coverage arose by operation of law under the umbrella policy; and (4) the CIC policies and the Royal policy are to be prorated. Accordingly, appellant's sole assignment of error is not well-taken.
On consideration whereof, we find that substantial justice was done the party complaining and the decision of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Melvin L. Resnick, J., James R. Sherck, J., and Mark L. Pietrykowski,P.J., CONCUR.