OPINION.
{¶ 1} The plaintiff-appellant, Jenise M. Glover, appeals from the order of the trial court denying recovery under the underinsured motorist ("UM/UIM") coverage of a business automobile policy issued to her husband's employer, Rhodes Furniture. Glover was badly injured in an accident in which she was driving her own personal vehicle, which was separately insured by Progressive Insurance Company. After electing to receive the UM/UIM limits of the Progressive policy ($100,000), Glover sought additional recovery under the UM/UIM coverage of the Lumbermens[1]
policy based upon the Ohio Supreme Court's decision in Scott-Pontzer v.Liberty Mut. Ins. Co., 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116.
 {¶ 2} In her single assignment of error, Glover argues that the trial court erred by denying her coverage under the Lumbermens policy based upon Scott-Pontzer. In its cross-appeal, Lumbermens argues thatScott-Pontzer should not even be considered controlling precedent because, under conflict-of-law principles, the applicable law was that of New Jersey, not Ohio. Further, Lumbermens argues that the passage of H.B. No. 261, amending R.C. 3937.18, specifically authorized the language in its policy that excluded Glover from the definition of an insured.
 {¶ 3} For the reasons that follow, we affirm.
 CHOICE OF LAW {¶ 4} Because it attacks the underlying premise of Glover's appeal, that Ohio law and Scott-Pontzer apply to this case, we address first Lumbermens's choice-of-law argument. Lumbermens relies upon the choice-of-law analysis set forth in the Restatement of the Law 2d, Conflict of Laws (1971), Sections 187 and 188. In Ohayon v. SafecoInsurance Co., 91 Ohio St.3d 474, 2001-Ohio-100, 747 N.E.2d 206, the Ohio Supreme Court adopted the Restatement sections as the proper analysis for UM/UIM actions. Among the factors to be considered are (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Id. at 477, 747 N.E.2d 206.
 {¶ 5} Applying the Restatement factors, Lumbermens argues, the applicable law should be that of New Jersey since the contract of insurance was "negotiated, made, issued for delivery, delivered from and underwritten in the state of New Jersey" for Rhodes Furniture. New Jersey law does not recognize Scott-Pontzer claims or imply UM/UIM coverage as a matter of law.
 {¶ 6} The trial court found that Ohio had the superior interests in this case based upon several factors, including (1) the place of the accident, (2) the Ohio domicile of both drivers, and (3) the likelihood, in the absence of direct testimony,[2] that Glover's vehicle was garaged in Ohio and that Rhodes Furniture had company vehicles principally garaged in Ohio. According to the trial court, these factors demonstrated that "Ohio has by far the greatest interest in the subject matter in dispute."
 {¶ 7} We agree with the trial court. As Glover points out, the factors set forth in Section 188 of the Restatement are expressly "to be evaluated according to their relative importance with respect to the particular issue," and, ultimately, the question is what state "has the most significant relationship to the transaction." Restatement of Law 2d, Conflict of Laws (1971), Sections 188(1) and (2). Although New Jersey was the place of contracting, Rhodes Furniture has stores located in Ohio and vehicles garaged in Ohio, and therefore Ohio, not New Jersey, was the locus of the performance. Compared to these factors, the "relative importance" of the place of contracting is significantly reduced. Furthermore, the "principal location of the insured risk," which is referred to in Section 193 of the Restatement as the primary factor in a contract of casualty insurance, was in Ohio.
 {¶ 8} We note further that the argument by Lumbermens that New Jersey law controls would seem at odds with the policy itself, which contains an "Ohio Uninsured Motorists Coverage Endorsement," as well as an Ohio UM/UIM rejection/selection form. Glover argues that these inclusions are "clear evidence that the parties chose Ohio law to apply to those vehicles principally garaged in Ohio." Although the trial court did not address this argument, we consider it persuasive.
 {¶ 9} In sum, we find no error in the trial court's choice of Ohio law.
 UM/UIM COVERAGE UNDER OHIO LAW {¶ 10} As noted previously, the Ohio Supreme Court has interpreted the standard business automobile UM/UIM coverage as extending to the business's employees, Scott-Pontzer, supra, as well as the employees' families. Ezawa v. Yasuda Fire Marine Ins. Co., 86 Ohio St.3d 557,1999-Ohio-124, 715 N.E.2d 1142. The rationale for this view is that when the contract of insurance with the business uses only the word "you" and nothing else to define the word "insured," "you" refers not to the corporate entity to whom the policy is issued, but to some person or persons, including the business's employees and their family members. According to the court in Scott-Pontzer, any other interpretation would be "nonsensical." 85 Ohio St.3d at 664, 1999-Ohio-292, 710 N.E.2d 1116.
 {¶ 11} Scott-Pontzer does not, it should be pointed out, prohibit insurers from contractually limiting the scope of the coverage itself, provided that the limitation is one expressly contained within the UM/UIM section of the policy. Id. at 666, 1999-Ohio-292, 710 N.E.2d 1116. Courts have also rejected the application of Scott-Pontzer where the policy-wide definition of an "insured" is expressly limited, as, for example, in a policy defining an "insured" as employees acting within the scope of their employment, see Lawler v. Firemen's Fund Ins. Co. (D.N.D. 2002),163 F. Supp.2d 841, or "executive officers, directors, and trustees, but only with respect to their duties * * *." Zirger v. Ferkel (June 6, 2002), 3rd Dist. No. 13-0205. It is also possible for the policy to limit coverage by a narrowing of the universe of vehicles to be covered. For example, this court recently affirmed the denial of coverage to a vehicle (the employee's motorcycle) that was not included among the list of insured vehicles required by the policy. See Weyda v. Pacific Employer'sIns. Co. (Jan. 31, 2002), 1st Dist. No. C-020410. In this regard, R.C. 3917.18(J), which resulted from H.B. No. 261 and became effective on September 3, 1997, provides that an insurer may provide UM/UIM insurance that expressly precludes coverage for bodily injury or death suffered by an insured "[w]hile the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of the named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made * * *."
 {¶ 12} The law in Ohio does prohibit insurers from issuing a policy of automobile liability insurance without first offering UM/UIM coverage in an amount equal to that of the separate liability coverage. R.C. 3937.18(A).[3] Failure to make such an offer results in the insured acquiring UM/UIM coverage by operation of law in the same amount as the liability coverage. See Gyori v. Johnston Coca-Cola BottlingGroup, Inc., 76 Ohio St.3d 564, 1996-Ohio-358, 669 N.E.2d 824. Insureds, however, may reject UM/UIM coverage, or select it in a lesser amount, provided that such rejection or selection is made expressly and knowingly. See former R.C. 3937.18(C); Gyori, supra; Abate v. PioneerMut. Cas. Co. (1970), 22 Ohio St.2d 161, 258 N.E.2d 429. The burden formerly was placed on the insurer to show that any rejection or selection had been knowingly made. Ady v. W. Am. Ins. Co. (1982),69 Ohio St.2d 593, 597, 433 N.E.2d 547. Prior to the passage of H.B. No. 261, amending R.C. 3937.18(C), a body of case law developed that required the insurer's offer of UM/UIM coverage to include certain information — a brief description of coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits — in order to constitute a valid offer. The Ohio Supreme Court formally adopted these requirements as necessary elements of a valid UM/UIM offer of insurance in Linko v. Indemnity Ins. Co. of North America,90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338.
 {¶ 13} Effective September 3, 1997, however, H.B. No. 261 amended R.C. 3937.18(C) to create a statutory presumption of an offer if the insured signs a written rejection of UM/UIM coverage or selects coverage in lesser amounts. Not surprisingly, the effect of the statutory presumption has become another source of contention. The question often litigated is whether the new statutory presumption has eliminated the evidentiary requirements for a valid offer required by Linko — in other words, whether the Linko requirements have survived H.B. No. 261. Recently, in Kemper v. Michigan Millers Insurance Co., 98 Ohio St.3d 162,2002-Ohio-7101, 781 N.E.2d 186, the Ohio Supreme Court, answering certified questions put to it by a federal district court, stated that the requirements of Linko were applicable to a policy of insurance written after the enactment of H.B. No. 261. Id. at ¶ 2. Furthermore, the court stated that a signed rejection of UM/UIM coverage under existing R.C. 3937.18(C), without any oral or documentary evidence of an offer, is not an effective "declination" of UM/UIM coverage. Id. at ¶ 3.
 WHAT THE TRIAL COURT FOUND {¶ 14} In the instant case, the liability coverage of the Lumbermens policy was in the amount of $1,000,000. Under a classicScott-Pontzer scenario, the same amount of coverage ($1,000,000) would be available as UM/UIM coverage by operation of law under R.C. 3937.18(A). The only findings that would preclude such a result would be if (1) Rhodes Furniture had properly rejected UM/UIM coverage or selected coverage for a lesser amount after a valid offer by Lumbermens, or (2) the language of the policy precluded coverage of the Glover vehicle.
 {¶ 15} The trial court disposed of this case on the first ground alone. As noted, the case was tried on a stipulated record. The stipulated record includes a UM/UIM rejection/selection form signed by John Madden, who, the parties agreed, was an "authorized representative" of Rhodes Furniture's parent company, Rhodes/Helig. The form contains a description of UM/UIM coverage and a description of the available limits. It does not, however, discuss the premiums for the different levels of coverage, as required by Linko.
 {¶ 16} The trial court, which did not have the benefit of the Ohio Supreme Court's answers in Kemper,[4] adopted the approach that the statutory presumption set forth in R.C. 3937.18(C), as amended by H.B. No. 261, eliminated the Linko requirements. Relying on the unreported decision in Roberts v. Underwriters (June 12, 1001), D.N.D. No. 5:00CV1180, the court concluded that the rejection form was valid because there was no evidence that it was not actually signed, or that the signature was induced by fraud, or that Rhodes did not intend to select the specified coverage levels. The trial court expressly rejected Glover's argument that any other "Court-ordered wording" was required, since to do so would, in the court's view, "render the presumption in R.C. 3937.18(C) meaningless."
 {¶ 17} Significantly, the trial court never reached the issue of coverage of Glover's vehicle under Scott-Pontzer, because the $100,000 setoff from the Progressive policy exceeded Lumbermens's maximum liability of $25,000 pursuant to the selection form. Having found the form to be valid, the court determined that "the issue of coverage is moot."
 CONTINUING APPLICATION OF LINKO {¶ 18} It is apparent to us that the Ohio Supreme Court in Kemper
expressly indicated that the Linko requirements have survived H.B. No. 261. Significantly, after the trial court ruled in this case, but beforeKemper, this court reached the same result in Roper v. State AutomobileMutual Ins. Co. (June 28, 2002), 1st Dist. No. C-10117. In Roper, we held that, in the absence of any contrary authority, the Linko requirements are still a necessary element of a valid offer after H.B. No. 261. As we described those elements in Roper, "the insurer had to inform the insured of the availability of UM/UIM coverage, set forth the premium, describe the coverage, and state the coverage limits." All these elements, moreover, had to appear within the four corners of the policy. Id.
 {¶ 19} Clearly the rejection/selection form of this case does not set forth premiums for the rejected coverage. Thus, one of the Linko
requirements is indisputably missing. The omission is not as egregious as that in Roper, where there was no signed declaration and no evidence of an offer. Roper was, in this regard, a much easier case. Still, given the Ohio Supreme Court's answer to the first certified question in Kemper, we hold that the trial court erred by finding the rejection/selection form to be evidence of a valid offer in the absence of any premium information.
 THE NO-LONGER MOOT QUESTION OF COVERAGE {¶ 20} As noted, the trial court did not reach the issue of coverage because of its finding that there had been a valid selection of UM/UIM coverage in an amount less than the setoff. Having determined the selection to have been based on an invalid offer, we are now confronted with the question of coverage. Glover's argument on this issue is relatively simple. Essentially it is this: the symbol 6 definition of a covered automobile contained in the "Business Auto Coverage Form," which attempted to limit coverage, was either (1) illusory, in that it eliminated all Ohio vehicles from coverage, or (2) ambiguous, because it confused the issue of coverage. In either case, Glover argues, she is entitled to $1,000,000 in UM/UIM coverage by operation of law because either (a) being illusory, the policy was a nullity, or (2) being ambiguous, the policy must be construed against Lumbermens as the insurer and drafter of the document. Scott-Pontzer, supra, at 665,1999-Ohio-292, 710 N.E.2d 1116.
 {¶ 21} The symbol 6 definition of a covered automobile reads as follows: "6 = OWNED `AUTOS' SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those `autos' you own that because of the law in the state where they are licensed or principally garaged are required to have andcannot reject Uninsured Motorists Coverage. This includes those `autos' you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirements." (Emphasis supplied.)
 {¶ 22} As can be seen, symbol 6 limits coverage to only those automobiles licensed or garaged in Ohio that "cannot reject Uninsured Motorists Coverage." The problem with this is that, as we have discussed, Ohio is a state that does allow rejection of uninsured-motorist coverage. This being the case, it would appear that no vehicles licensed or garaged in Ohio are covered by the policy. The UM/UIM coverage of the policy would, therefore, be, as Glover argues, illusory. The coverage would cover nothing.
 {¶ 23} Lumbermens does not directly dispute this conclusion, nor does it offer any other interpretation of symbol 6. Rather, Lumbermens argues that, in order to collect under the policy, Glover had to first meet the definition of an insured. In other words, even if UM/UIM coverage of $1,000,000 arises by operation of law under Scott-Pontzer, it does so only with respect to an insured. While Scott-Pontzer and Ezawa
hold that an employee and his family members are to be construed as insureds when the business entity is the only named insured, these cases do not preclude the policy from expressly excluding spouses and family members from UM/UIM coverage. Indeed, as we have previously noted, such exclusions are expressly authorized by statute. See R.C. 3929.18.
 {¶ 24} According to Lumbermens, Glover was expressly excluded from the definition of an insured under the C5b provision of the policy. That exclusion specifically states that the insurance does not apply to bodily injury sustained by "[a]ny family member while `occupying' or when struck by any vehicle owned by that `family member' that is not a covered `auto' for Uninsured Motorist Coverage under this Coverage Form." (Emphasis supplied.) As Lumbermens points out, this exclusion is of the type expressly allowed by R.C. 3939.18(J)(1). Since symbol 6 effectively removed all Ohio vehicles from UM/UIM coverage under the policy, and since the vehicle Glover was occupying while struck was an Ohio vehicle, the C5b provision would necessarily apply to her, making her not an insured. Consequently, Lumbermens argues, she cannot be the beneficiary of any UM/UIM coverage arising by operation of law under Scott-Pontzer.
 {¶ 25} We find this logic persuasive. Symbol 6 is illusory in that it eliminates all Ohio vehicles from UM/UIM coverage. The illusory nature of symbol 6 results in coverage arising under Scott-Pontzer by operation of law — but only with respect to those who are insureds under the policy. Thus, if Glover's husband, the Rhodes employee, had been injured, he would have been entitled to the $1,000,000 implied coverage since he was an insured. Jenise Glover, however, was clearly not an insured under the C5b provision read in conjunction with symbol 6. Although the dual effect of symbol 6 might appear odd, the difference lies in the distinction between the question of coverage and the question of who is an insured. As a noninsured, Jenise Glover was simply not within the universe of persons qualified to receive the additional coverage imposed by operation of law under Scott-Pontzer.
 {¶ 26} In sum, we hold that, pursuant to Kemper, there was no valid offer of UM/UIM insurance in this case; that consequently UM/UIM coverage equal to the liability coverage ($1,000,000) arose by operation of law for those insured under the policy; but that Jenise Glover was not an insured under the policy and therefore could not have recovered under the implied-in-law coverage. Glover's assignment of error is therefore overruled, and because the cross-appeal on the choice-of-law issue also fails, we affirm the judgment of the trial court.
Judgment affirmed.
SUNDERMANN, J., concurs.
Doan, J., concurs separately.
[1] Although apparently meant in the plural possessive, Lumbermens is not spelled with an apostrophe.
[2] The case was tried on stipulated facts. None of the stipulations concerned the location where the automobiles under the policy were garaged; however, the trial court made an inference, which we deem reasonable, that the automobiles were garaged in Ohio.
[3] Former R.C. 3937.18, in effect at the time of Glover's accident, provides, "No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insured: (1) Uninsured motorist coverage * * *. (2) Underinsured motorist coverage * * *."
[4] The trial court's judgment was entered on February 22, 2002.Kemper was decided on December 24, 2002.